Original,
No. 5089.

ALFRED CATALFO, JR.

*v.*

NORRIS COTTON

and

ROBERT L. STARK, *Secretary of State.*

Hearing October 5, 1962.

Submitted October 9, 1962.

Order Issued October 10, 1962.

Opinion Filed October 19, 1962.

*Joseph A. Millimet* and *Lawrence J. Walsh* (*Mr. Millimet* orally), for the plaintiff.

*H. Thornton Lorimer* (by brief and orally), for the defendant Cotton.

*William Maynard*, Attorney General and *Elmer T. Bourque*, Deputy Attorney General, for the defendant Secretary of State.

KENISON, C. J. The defendant in his preprimary report to the Secretary of State of receipts and expenditures listed an item of $5,950 as "proceeds of testimonial dinner Aug. 1, 1961." In his postprimary filing this was amended by a note reading as follows: "Item No. 8 on page 1 of Statement of Receipts and Expenditures, filed September 5, 1962, should be amended by stating that said testimonial dinner was held at the Army-Navy

Club, Washington, D. C. on August 1, 1961, and was given by the Republican Senatorial Campaign Committee, the address of which is 449A Old Senate Office Building, Washington, D. C." It is urged by the plaintiff that this amended statement is inaccurate, fails to disclose the names of and amounts given by individual contributors and does not comply with the manifest purposes of the statute. Before considering these contentions we must first determine whether this testimonial dinner in 1961 was a reportable item in view of the fact that it was given before the defendant announced his candidacy late in 1961 or filed his declaration of candidacy in 1962. In considering whether this dinner was a reportable item it will be necessary to examine the legislative history of the statute relating to political expenditures, advertising and contributions which now appears as RSA ch. 70 (supp).

Prior to 1955, when the election statute was substantially rewritten, the law required that all receipts and expenditures by or in behalf of a candidate "during the calendar year of the primary" must be reported. R. L., c. 42, ss. 5, 20, 21. The law was so interpreted and administered by the Attorney General and others with the result that candidates were required to report "all contributions received and all expenditures made during the calendar year of the primary." See Attorney General's "Construction and Interpretation" of election laws, dated November 15, 1953 at pp. 7, 12 and 13. This interpretation was published pursuant to the then existing laws. Laws 1951, c. 278; Laws 1953, c. 248.

The changes made in 1955 and 1957 were substantial and numerous. RSA ch. 70 (supp); Laws 1955, c. 273; Laws 1957, c. 303. The law as rewritten in 1955 and 1957 placed certain limitations upon contributions without regard to the period of time involved. RSA 70:2, 3 (supp). The law also placed limitations as to the amount of money that could be expended by a candidate during the period of the campaign. RSA 70:4 I (supp). Specifically this section provided that certain items of expenses should be excluded from the limitation but that it should "include all expenditures . . . during the period of time [the candidate] or others . . . seek votes for him to and including the date of the primary." RSA 70:4 I (supp).

The new law required that state committees should file reports with the Secretary of State covering contributions received and

expenditures made for a period "since the date of the *last election*." (Emphasis supplied). RSA 70:5 (supp). In stark contrast, however, this law required that reports by major candidates shall be filed with the Secretary of State of "each receipt and expenditure covering the *period of his candidacy*" only. (Emphasis supplied). RSA 70:6 (supp). The difference between requiring a report from a state committee "since the date of the last election" on the one hand and a similar report from a major candidate limited to "the period of his candidacy" on the other hand cannot be deemed an inadvertent legislative oversight. While it may well be that in the interest of full public disclosure of contributions no such distinction should be made between state committees and major candidates, this is clearly a matter for legislative therapy rather than judicial surgery.

The evidence indicates that the candidate Cotton did not announce his candidacy until late in 1961 or file his declaration of candidacy until 1962. See RSA 56:11. In view of the statutory changes enacted in 1955 and 1957, we are of the opinion that candidate Cotton was not required to report receipt of the proceeds of the testimonial dinner held in August 1961. It may be argued with force that the existing legislation weighs heavily in favor of an incumbent as compared to a new candidate but we find no basis in the existing law to require that this testimonial dinner in 1961 be reported in 1962. It is therefore unnecessary to determine the extent to which a report, when required, should contain more specific details as to names, addresses and the amounts of contributions. RSA 70:10 (supp).

The plaintiff's second basis for disqualifying the defendant candidate is that he failed to include in his report of receipts the fair value of the services of employees of his office on the federal payroll who participated in his campaign. It was undisputed that some of the defendant's official staff were engaged in aiding the defendant's campaign in New Hampshire. The defendant testified that it was impossible to separate the time spent by his regular staff in connection with the duties of his office and that which could be considered of value to his campaign. No other witness came up with any Solomon's test which would determine the point at which senatorial duties to constituents ended and campaign considerations began. The law provides that "no account shall be taken" of the candidate's ". . . expenditures . . . for services of his regular employees in discharging

the duties of a public office." RSA 70:4 I (supp). This provision, which was inserted by Laws 1957, 303:2, was intended to eliminate the necessity for trying to evaluate and apportion the services of the staff of a public official. The legislative intent is reasonably clear. The statute eliminates the necessity for accounting for any services of persons who are regular employees discharging duties of a public office, as distinguished from other employees of a candidate privately employed by him for campaign purposes. The defendant was not required under the statute to account for the services of his regular employees engaged in discharging duties of his public office.

The plaintiff's third claim as a basis for the disqualification of the defendant is that he failed correctly to identify five contributions totaling $6,883.93. These contributions were received in 1961 and in each case from the chairman of a committee who collected the contributions from others upon the representation that they were not campaign expenses. They were forwarded to the defendant with a like limitation and a statement that they were for use in maintaining contact with his constituents prior to any campaign for re-election. It appeared that these contributions were made to the defendant and other Republican Senators and were ". . . largely attributable to the interest and support of Senator Goldwater." While the defendant had been advised that these contributions were not campaign contributions and were not reportable as such, he nevertheless decided that as a matter of precaution he should list them in his report to the Secretary of State. Obviously the fact that a contribution is made with the understanding that it is not a campaign contribution does not insulate it from scrutiny or reporting, and we do not so hold.

It is not clear from the evidence before us whether the defendant's candidacy was announced before or after the date that these contributions were received in December 1961. However, assuming that they were received, in the words of the statute, during "the period of [the defendant's] candidacy" (RSA 70:6 (supp)), we hold that they were reported in his statement in compliance with the law. RSA 70:5, 6 (supp).

Other grounds for disqualification alleged in the petition were not pressed at the hearing or in arguments and we have therefore not considered them.

While RSA 70:17 (supp) which permits any person to petition

this court to disqualify a candidate has been characterized as "highly anomalous" (*Coutremarsh* v. *Metcalf*, 87 N. H. 127, 129), "it places a duty on this court to proceed forthwith to hear the matter and make a final decision of both facts and law." *Daniell* v. *Gregg*, 97 N. H. 452, 454. In so doing, we have not attempted directly to indicate how the law should be amended to cover its full objectives in the interest of complete reporting and public disclosure of political receipts and expenditures. This is a legislative problem which has not been solved with complete success here or elsewhere. Heard, The Costs of Democracy, *c.* 16 (1960); Note, Statutory Regulation of Political Campaign Funds, 66 Harv. L. Rev. 1259 (1953); Robinson, Revision of Federal Law on Campaign Finances, 30 Geo. Wash. L. Rev. 328 (1961).

*Petition dismissed.*

All concurred.